IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MAGDALINE P. AUSTIN, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:04-1557-26BD |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record shows that Plaintiff applied for Supplemental Security Income (SSI) on January 12, 2001, alleging disability as of February 1, 1998 due to a back and neck injury, and lung disease. (R.pp. 66-68, 75, 196-237). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on October 11, 2002. (R.pp. 31-52). At this hearing, Plaintiff also cited leg problems, as well as chest pain and problems with her breathing, as a basis for disability. (R.pp. 38-41). On December 26, 2002, the ALJ denied Plaintiff's claim in a written decision. (R.pp. 14-25). The Appeals Council

denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as

it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-eight (48) years old when she alleges her disability began, has a high school education and training as a certified nurse's assistant. However, she has no past relevant work experience. (R.pp. 24, 36). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that Plaintiff has the residual functional capacity for medium work[1], and that given her age, education, and residual functional capacity, Rule 203.12 of the Medical-Vocational Guidelines (i.e., the "Grids")[2] directed a conclusion that Plaintiff was not disabled. (R.pp. 24-25).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly account for Plaintiff's shoulder impairment in his finding that Plaintiff could perform medium work,

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). "If someone can do medium work," he is also considered capable of performing the less strenuous requirements of sedentary and light work. Id.

[2] "The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the girds, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.

3

and further erred by using the Grids to direct a finding of not disabled despite the fact that Plaintiff suffers from non-exertional limitations. Plaintiff also argues that the Appeals Council erred by failing to properly evaluate new evidence submitted by Plaintiff on appeal.

After careful consideration of the evidence and arguments presented, the undersigned is constrained to agree with the Plaintiff that the ALJ did not properly account for his own finding in his decision that Plaintiff suffers from frozen left shoulder, and that this case must therefore be reversed and remanded for further proceedings.

**I.**

The ALJ found that Plaintiff retained the residual functional capacity for medium work even though she suffers from myofascial pain affecting her neck and back, a frozen left shoulder and a partial AC joint tear, and degenerative changes of the cervical and lumbar spines. In making this finding, the ALJ concluded that Plaintiff's shoulder impairment did not significantly impinge on her ability to perform a full range of medium work, citing to the medical record as well as Plaintiff's own activities of daily living to support this finding and conclusion. (R.pp. 20, 23-24). However, while Plaintiff's medical records may otherwise provide substantial evidence to support this conclusion, this conclusion cannot be reconciled with the ALJ's specific finding that Plaintiff suffers from frozen left shoulder. (R.p. 24, Finding No. 5).

As far back as 1998, examinations for complaints of back pain found that Plaintiff had normal bulk and tone in her lower extremities, with 5/5 (full) strength in all muscle groups and normal reflexes. (R.pp. 158-159). An examination performed by Dr. Frank Shafer on March 19, 2001 found that Plaintiff could flex her back about 45°, had reasonably good range of motion in her neck, good range of motion in all other joints, normal reflexes, and no gross motor or sensory loss.

4

While Plaintiff displayed difficulty with lifting her left shoulder, x-rays showed osteopenia with only mild degenerative changes in Plaintiff's lumbar spine, and only mild degenerative changes with "slight" upper thoracic spinal scoliosis in her cervical spine. Plaintiff's cervical discs were well preserved, C1-C2 articulation was intact, and there was no fracture or soft tissue swelling. Dr. Shafer also noted that Plaintiff's complaints of neck and low back pain were of "questionable etiology". (R.pp. 148-149).

Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician].

Plaintiff continued thereafter to complain of left arm and shoulder pain, and a May 24, 2001 MRI of Plaintiff's left shoulder showed normal bony structure with some abnormal thickening of the mid-supraspinatus tendon with degenerative changes. (R.p. 163). When Plaintiff was seen by Dr. J.A. Baker on June 7, 2001, x-rays again showed only mild degenerative changes in Plaintiff's cervical spine, while her shoulder showed type 2 acromion. (R.p. 182). Dr. Baker concluded that Plaintiff had left frozen shoulder and recommended continuing physical therapy. Id. However, Plaintiff's physical therapist informed Dr. Baker that Plaintiff's physical therapy sessions were not helping, and that Plaintiff still complained of having pain at the 9 and 10 level out of a 10 point scale, even though she did not "visually appear to be in severe constant pain." (R.p. 179). Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983) [claimant's exaggeration of symptoms is a relevant factor for the ALJ to consider]. Dr. Baker indicated that he would continue to follow Plaintiff "conservatively". (R.p. 182). See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [holding that conservative treatment is not consistent with allegations of disability]. The ALJ also noted that Plaintiff apparently did not follow-up with additional physical therapy as she was advised

5

to do, and never returned to the Salisbury Orthopedic Associates for additional treatment. (R.p. 23). See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) [finding that a failure to seek treatment supported an inference that the claimant's condition was not disabling]; *cf.* Hunter, 993 F.2d at 36 [record of failure to obtain treatment provided substantial support for ALJ's finding that claimant's impairments did not preclude him from returning to work].

As noted, these medical records could constitute substantial evidence to support the RFC found by the ALJ in his decision, and it is apparent from a review of the ALJ's decision that he relied on these records in reaching his conclusions. (R.pp. 19-23). Plaintiff's main argument with respect to her residual functional capacity appears to rest on a physical residual functional capacity assessment completed by a state agency physician on March 20, 2001 after review of Plaintiff's medical records. The state agency physician found that while Plaintiff could perform work at the medium exertional level, she was unable to climb ladders, ropes, and scaffolds, and was limited to reaching or lifting above chest level. (R.pp. 104-111). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner]. However, the ALJ was not required to accept the state agency physician's assessment as to Plaintiff's reaching and lifting capacity, and obviously chose to give greater weight to the other evidence in the record. See Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) [it is the Commissioner who is charged with resolving conflicts in the evidence, and the Court cannot reverse a decision merely because the evidence would permit a different decision]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988) ["[t]he substantial evidence standard presupposes…a zone of choice within which the decision

6

makers can go either way without interference by the courts"]; see also Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Craig v. Chater, 76 F.3d at 595 [inconsistencies between a claimant's statements and other evidence in the record can be considered in making a credibility determination].

However, in reaching his decision, the ALJ specifically accepted Dr. Baker's diagnosis of Plaintiff having a frozen left shoulder. (R.pp. 20, 24, Finding No. 5). Frozen shoulder, which is also called adhesive capsulitis, "is a condition in which movement in the shoulder joint and between the shoulder blade and the ribs is restricted, and there is pain both on moving the arm and at rest." Khon v. Barnhart, No. 03-5122, 2004 WL 2203740, at *3, n. 8 (E.D.Pa. Sept. 3, 2004). Movement of the shoulder is severely restricted in people with frozen shoulder; see Frozen Shoulder, Information provided by the National Institute of Arthritis and Musculoskeletal and Skin Diseases at http://healthlink.mcw.edu/article/926059314.html; and while frozen shoulder is a condition that can be treated, in some patients it may take years to resolve. See Frozen Shoulder, American Academy of Orthopaedic Surgeons at http://orthoinfo.aaos.org/fact/thr_report.cfm.

No information is provided in the medical evidence as to what stage Plaintiff's frozen shoulder disease has reached, nor does the ALJ make any findings in this regard.[3] Therefore, the ALJ's basic finding that Plaintiff suffers from a frozen left shoulder, without more information or explanation, is inconsistent with, and in direct contravention of, the ALJ's conclusion that Plaintiff's shoulder impairment does not significantly impinge on her ability to perform a full range of medium work; and if Plaintiff was unable to perform the full range of medium work, then it was improper for the ALJ to have relied on the Medical-Vocational Guidelines to direct a finding of not disabled. Rather, vocational expert testimony should have been obtained to determine if jobs exist which Plaintiff could perform with her limitations.[4] See  See Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); *cf.* Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Fenton v. Apfel, 149 F.3d 907, 910 (8th Cir. 1998) ["The Secretary is required to produce vocational expert testimony concerning availability of jobs which a person with a claimant's particular characteristics can perform, if his or her characteristics do not match those in the regulations, either because of suffered non-exertional impairments, or because her or she is precluded from performing a full range of a particular work classification, or for any other reason."]; Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996).  Therefore, reversal is required on this issue.

---

[3]Frozen Shoulder apparently has three distinct stages. In Stage One (the "freezing" stage), the patient develops a slow onset of pain, and as the pain worsens, the shoulder loses motion. In Stage Two (the "Frozen" stage), there is a slow improvement in pain, but the stiffness remains. In Stage Three (the "thawing" stage), shoulder motion slowly returns to normal. Frozen Shoulder, American Academy of Orthopaedic Surgeons at http://orthoinfo.aaos.org/fact/thr-report.cfm.

[4]Since the ALJ applied the Medical-Vocational Guidelines to direct a finding of not disabled, no vocational evidence was obtained.

8

**II.**

Finally, Plaintiff also argues that the Appeals Council's failure to make specific findings evaluating new evidence submitted by her to the Appeals Council requires reversal of the decision. The record shows that as part of her request for Appeals Council review of the ALJ's decision, Plaintiff submitted additional medical records from Dr. Neil Patel. (R.pp. 191-237). In her brief to the Appeals Council, Plaintiff stated that she was first seen by Dr. Patel in July 2002 for complaints of "chest congestion over the last several months", with initial problems developing in February. Her initial chest x-rays were essentially normal, but by June she was suffering from "diminished air movements throughout" her lungs. See (R.p. 198). Dr. Patel evaluated Plaintiff for complaints of dyspnea and chest discomfort, and in a letter to Plaintiff's attorney dated November 8, 2002 he stated that Plaintiff appeared to have significant shortness of breath with minimal activity, and that her pulmonary function test indicated that her lungs were approximately 47% of that predicted for her age and size. Dr. Patel opined that Plaintiff could only perform sedentary work. (R.p. 203). In its decision rejecting Plaintiff's appeal, the Appeals Council noted only that it had considered the additional evidence submitted but had found that this information did not provide a basis for changing the Administrative Law Judge's decision; (R.pp. 5-6); and Plaintiff objects to the Appeals Council's failure to make specific findings concerning this new evidence.

While "bare bones" conclusions by Appeals Councils have been criticized by some past court decisions; see Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978) ["A bald conclusion unsupported by reasoning or evidence, is generally of no use to a reviewing court…."]; there is also caselaw to the effect that the decision of the Appeals Council as set forth hereinabove is sufficient in the Fourth Circuit. See Hollar v. Commissioner of the Social Security

9

Administration, No. 98-2748, 1999 WL 753999, at \*\*1 (4th Cir. September 23, 1999), citing Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992) and 20 C.F.R. § 404.970(b) (1999); see also Ridings v. Apfel, 76 F.Supp.2d 707, 709 (W.D.Va. 1999). Some other courts have taken a middle position, indicating that whether a more detailed explanation is required may depend on the nature of the evidence submitted. *Cf.* Smart v. Barnhart, 2004 WL 289152, at \*3, n. 2 (D.S.C. Dec. 7, 2004).

However, in this particular case, it is not necessary for this Court to make a finding as to whether the Appeals Council's consideration of this evidence was proper in this instance. If the Court adopts the recommendation for remand set forth hereinabove, it would be appropriate and proper for the Commissioner to also consider on remand any other evidence relevant to Plaintiff's claims, including the evidence submitted to the Appeals Council. *Cf.* Mickles, 29 F.3d at 925-926 [In assessing the credibility of the severity of reported subjective complaints, consideration should be given to the entire record].

## Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed** under Sentence Four, and that this case be **remanded** to the Commissioner for the purpose of further evaluation of Plaintiff's shoulder impairment, including if necessary the taking of vocational expert testimony to establish whether jobs exist in sufficient numbers which Plaintiff can perform with her limitations, for consideration of the medical records

of Dr. Patel, and for any further administrative proceedings consistent with this opinion. See

<u>Shalala v. Schaefer</u>, 113 S.Ct. 2625 (1993).

<u>s/ BRISTOW MARCHANT</u>
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

March 14, 2005