

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| MAGDALINE P. AUSTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO.  0:4-1557-HFF-BM |
| | § | |
| JO ANNE BARNHART, Commissioner | § | |
| of Social Security, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND
RECOMMENDATION OF THE MAGISTRATE JUDGE AND REVERSING AND
REMANDING THE DECISION OF DEFENDANT

## I.    INTRODUCTION

This is a Supplemental Security Income (SSI) action.  The matter is before the Court for

review of the United States Magistrate Judge's report and  recommendation (report) in which he

recommends  that  the  decision  of  the  Commissioner  be  reversed  and  remanded  for  further

proceedings.  The report is made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02

D.S.C.

## II.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff states that her disability began around age forty-eight due to back and neck injuries

causing  pain, headaches and left shoulder pain.  Plaintiff has a high school education and training

as a nurse's aid.  Plaintiff, however, has no prior relevant work experience.  Plaintiff's impairments

are summarized as follows:

> Austin suffers from pain in the back, neck, legs, chest and shoulder.  She has
> trouble breathing.  She has significant weight loss.  She sometimes has
> trouble sleeping.  She is unable to sit or stand for very long, and cannot bend
> very well.  She can lift about five pounds.  She has swelling in the lower legs.

Pl's Br. at 3 (footnote omitted).

Plaintiff asserts that, since 1995, she has been treated for the multiple medical problems set

forth above.  On March 19, 2001, an evaluation by Dr. Frank Shafer revealed that Plaintiff had

difficulty raising her left arm above 90 degrees and flexing her back beyond 45 degrees, generally

one-half of joint full range respectively.  Results from a May 2001 MRI indicated:

> abnormal thickening of the mid supraspinatus tendon with increased signal
> on both the T1 and T2-weighted images. Findings indicate a intrasubstance
> tear with degenerative change; however, no full thickness tear is
> demonstrated, . . . [t]here is also some increased signal at the biceps labral
> complex which may indicate some inflamation and partial tearing. There is
> some fluid in the subcoracoid bursa.

Pl's Br. at 7 (footnote omitted).  Moreover, on June 7, 2002, Dr. J.A. Baker diagnosed Plaintiff with

left frozen shoulder.  Report at 5.  Plaintiff's subsequent visits to Salisbury Orthopaedic Associates

revealed limited range of motion (ROM) in the left shoulder internal and external rotation, along

with reproducible pain.  Pl's Br. at 6.  Follow-up documentation at the Salisbury Clinic demonstrates

minor improvements in Plaintiff's left shoulder ROM and consistent back pain.  Pl's Br. at 9.

On January 21, 2001, Plaintiff applied for SSI income alleging disability as of February 1,

1998, due to her back and neck injury as well as lung disease.  After Plaintiff's action was initially

denied, Plaintiff requested a hearing before the Administrative Law Judge (ALJ).  At the hearing

before the ALJ on October 11, 2002, Plaintiff cited leg problems, chest pain, and breathing

difficulties as a basis for disability. On December 26, 2002, the ALJ denied Plaintiff's claim, determining Plaintiff bears residual functional capacity (RFC) for medium work.[1] Due to her education, age and RFC for medium work, the ALJ concluded that "[r]ule 203.12 of the Medical-Vocational Guidelines ("the grids") directed a conclusion that Plaintiff was not disabled." Report at 3 (footnote omitted). However, the ALJ also found that Plaintiff suffered from myofascial pain affecting her neck and back, left adhesive capsulitis (i.e., "frozen shoulder"), partial AC joint tear, and degenerative changes of the cervical and lumbar spine. Report at 4. Moreover, the ALJ, construing Plaintiff's medical records and activities of daily living, held Plaintiff's shoulder impairment failed significantly to hinder her ability to perform a full range of work. *Id.* The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision and refused to consider new evidence presented by Plaintiff, thus rendering the ALJ's determination the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's final decision, asserting that substantial evidence did not exist to support the ALJ's decision, specifically that portion of the decision regarding Plaintiff's left shoulder impairment.

The Magistrate Judge filed his report on March 14, 2005, recommending reversal of the Commissioner's findings and remand to the Commissioner for further proceedings. Defendant filed her objections on March 30, 2005.

---

[1] According to 20 C.F.R. § 404.1567(c), "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary or light work."

## III.     STANDARD OF REVIEW

A.     *Report and Recommendation*.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a *de novo* determination of those portions of the report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or may recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

B.     *Judicial review regarding final decision of disability benefits under the Social Security Act (SSA).*

The final determination of the Commissioner regarding disability benefits under the Social Security Act must be upheld if (1) it is supported by substantial evidence, and (2) it was determined through application of the correct legal standard. *Craig v. Charter*, 76 F.3d 585, 589 (4th Cir. 1996); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 402 (1971)) (internal citations and quotations omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal citations omitted).

Therefore, when reviewing for substantial evidence, a court will not undertake to "re-weigh conflicting evidence, make credibility determinations, or substitute [the court's] judgment for that

4

of the [Commissioner]." *Craig,* 76 F.3d at 589. (citing *Hays*, 907 F.2d at1456). Thus, the issue becomes not whether Plaintiff is disabled, but whether the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence and was determined by a correct application of the relevant law. *Id.* Defendant's objection maintains that the Magistrate incorrectly applied the substantial evidence standard by re-weighing the evidence considered by the ALJ. The Court agrees with Defendant that a *de novo* re-evaluation of the evidence is beyond the scope of the Court's review; however, for the reasons discussed below, the Court finds that the ALJ's findings are not supported by substantial evidence.

## IV.    DISCUSSION

Under the Social Security Act, a person is "disabled" if he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(1)(A). Furthermore, a physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3). Thus, to determine disability, "an underlying medically determinable impairment resulting from some demonstrable abnormality must be established." *Craig*, 76 F.3d at 592.

According to 20 C.F.R. § 416.921(a) (2004), a non-severe impairment is one that "does not significantly limit your physical or mental ability to do basic work activities." Moreover, basic work activities are defined as "the abilities and aptitudes necessary to do most jobs. Examples include

. . . [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" *Id.* at § 416.921(b)(1).

Moreover, impairments and related symptoms, such as pain, that limit one's ability to meet functional or certain job demands may be exertional, non-exertional or a combination of both. *Id.* at § 404.1569a(a). Exertional limitations involve impairments and related symptoms affecting only one's ability "to meet strength demands of jobs (i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling)" *Id.* at § 404.1569a(b). On the other hand, non-exertional limitations include those that affect one's ability "to meet the demands of jobs other than the strength demands . . . examples of nonexertional limitations or restrictions include . . . difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." *Id.* at § 404.1569a(c)(vi).

Thus, where "the claimant's impairment is nonexertional–not manifested by a loss of strength or other physical abilities–or is marked by a combination of exertional and nonexertional impairments, the grids' Rules are not conclusive[.]" *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). In these cases, the ALJ cannot allow preclusive affect to the grids and "must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curium) (citations omitted). Moreover, "'when an ALJ uses the grid, the most important finding that the ALJ must make is what kind of physical activity the claimant can sustain.'" *Hammond*, 765 F.2d at 425 (quoting *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)).

In the case at hand, the ALJ determined Plaintiff suffered from myofascial pain in her neck and back, a frozen left shoulder, partial AC joint tear, and cervical/lumbar spine degenerative

changes. Report at 4. Moreover, the ALJ "specifically accepted Dr. Baker's diagnosis of Plaintiff having a left frozen shoulder." Report at 7. The Magistrate correctly described frozen shoulder in his report stating, "adhesive capsulitis is a condition in which movement in the shoulder joint and between the shoulder blade and the ribs [scapulothoracic] is severely restricted in people with frozen shoulder[.]" *Id.* (citation omitted).

Thus, the ALJ's determination that Plaintiff suffers from frozen shoulder directly contradicts his conclusion that Plaintiff's shoulder impairment does not significantly impair Plaintiff's ability to perform a full range of medium work. Moreover, the ALJ failed to determine that Plaintiff's functional or physical limitations regarding the left shoulder. In June 7, 2002, medical reports state Plaintiff had limited ROM in her left shoulder internal and external rotation. The ALJ failed to establish any other findings regarding Plaintiff's functional or physical limitations in the left arm.

Moreover, the ALJ improperly relied on the grids to determine whether Plaintiff was disabled since evidence exists that Plaintiff suffers from nonexertional limitations. Specifically, the ALJ determined that Plaintiff suffered from myofascial pain as well as frozen shoulder, which may limit Plaintiff's ability to reach. *See* 20 C.F.R. §§ 404.1569a(c) - (c)(vi) (2004) (nonexertional limitations may include "difficulty performing the manipulative or postural functions . . . such as reaching, handling, stooping, climbing, crawling, or crouching.").

Therefore, this Court concludes that the ALJ's determination that Plaintiff is not disabled requires reversal. Having reached this conclusion, the Court agrees with the Magistrate Judge that it need not consider whether the Appeals Council's failure to make specific findings on additional evidence presented by Plaintiff constituted error. On remand, Plaintiff will have adequate opportunity to present this evidence to the Commissioner. *Cf. Mickles v. Shalala,* 29 F.3d 918, 925-26 (4th Cir. 1994) (holding that in assessing the credibility of the severity of reported subjective

complaints, consideration should be given to the entire record).

### IV.     CONCLUSION

Therefore, after a thorough review of the report and the objections pursuant to the standard set forth above, and in light of the above analysis, it is the judgment of the Court that Defendant's objections be overruled and that the report be adopted and incorporated to the extent that it does not contradict this order.  Accordingly, the decision of the Commissioner is **REVERSED** and the case is **REMANDED** to the Commissioner for (1) further evaluation of Plaintiff's shoulder impairment, including, if necessary, the taking of vocational expert testimony to establish whether jobs exist in sufficient numbers which Plaintiff can perform with her limitations, (2) for consideration of the medical records of Dr. Patel, and (3) for any further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed this 2d day of September, 2005, in Spartanburg, South Carolina.


 s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE

.